IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| THE RESERVE AT WINCHESTER I, LLC and ROBERT B. CATHCART, ) ) ) | |
| Plaintiffs, ) | Civil Action No. 3:21-cv-00008 |
| ) ) | **MEMORANDUM OPINION** |
| v. ) ) | By: Hon. Thomas T. Cullen |
| R 150 SPE, LLC, ) ) | United States District Judge |
| Defendant. ) | |

This case is before the court on Defendant R 150 SPE LLC's ("R 150") motion to dismiss Plaintiffs Robert B. Cathcart and The Reserve at Winchester I, LLC's ("Reserve") second amended complaint. (ECF No. 111.)

## I. BACKGROUND

The facts and procedural posture of this case are well known to the parties and need not be restated here. *See Rsrv. at Winchester I, LLC v. R 150 SPE*, No. 3:21-cv-8, 2022 WL 358500, at *1–3 (W.D. Va. Feb. 7, 2022).

## II. STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's

allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). Courts ruling on 12(b)(6) motions can consider documents attached to the complaint as exhibits. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

### III.   ANALYSIS

The present motion reiterates arguments considered—and rejected—by the court in its prior opinion. Nothing in R 150's most recent filings disrupts the court's conclusions. The contested real estate purchase option agreement (the "Option") is an enforceable contract governed by Virginia law. *Rsrv. at Winchester*, 2022 WL 358500, at *3–5. Reserve has the power to enforce that contract as an intended third-party beneficiary. *Id.* at *5–6. And Plaintiffs have stated a plausible claim for breach of contract. *Id.* at *9–10.

Plaintiffs have also stated a plausible claim for specific performance. *Id.* at *10–11. In the Third Amendment to the Option, the parties agreed to the location of a trail. (*See* ECF No. 80-14, at 2.) That trail's location is depicted in a site plan (the "November 2020 site plan") incorporated by reference into the Third Amendment. (*See, e.g.*, ECF No. 80-15, at 5, 7.) In other words, the site plan is a part of the Option, at least for purposes of setting the trail's location. And the court finds it plausible that the parties would not have agreed to the trail's

location without having also agreed to the actual construction's location and Parcel 1's boundaries. *See Rsrv. at Winchester*, 2022 WL 358500, at *10–11; *see also Iqbal*, 556 U.S. at 678 (discussing Fed. R. Civ. P. 12(b)(6)'s plausibility standard).

R 150 now moves to dismiss Plaintiffs' second amended complaint. (ECF No. 111.)[1] The court will not consider R150's recycled arguments, but it will address its new ones.

*First*, R 150 suggests that specific performance is only available where the identified land has previously been recorded by the government, as through a subdivision plat or listed address. For support, R 150 relies on *Firebaugh v. Whitehead*, 559 S.E.2d 611 (Va. 2002), and three other specific-performance cases cited in *Firebaugh*.

This reads *Firebaugh* too narrowly. The contract in that case described the disputed land as "certain parcels . . . designated as Tax Parcel # 72–83 and Tax Parcel # 72–53 . . . ." *Id.* at 613. The buyer's expert was able to cross-reference the contract terms "with extrinsic evidence including land records and the plat referenced in the agreement" to identify the land conclusively. *Id.* at 615. The Supreme Court of Virginia affirmed a grant of specific performance for the sale of land. *Id.* at 616. *Firebaugh* referenced Tax Parcels, and R 150 points out that at least three cases cited in *Firebaugh* also granted specific performance of contracts for the sale of land identified by tax units or lot numbers. (*See* Def.'s Br. Supp. Mot. Dismiss at 8–9 [ECF No. 112] (citing *Pavlok v. Gallop*, 154 S.E.2d 153 (Va. 1967); *Smith v. Bailey*, 127 S.E. 89 (Va. 1925); and *Harper v. Wallerstein*, 94 S.E. 781 (Va. 1918)).)

---

[1] The court's prior opinion analyzed the arguments contained in Plaintiffs' second amended complaint. *See Rsrv. at Winchester*, 2022 WL 358500, at *8–17. That analysis centered on whether granting Plaintiffs leave to amend would be futile. Analysis of a proposed amended complaint's futility and of its sufficiency under Federal Rule of Civil Procedure 12(b)(6) are functionally identical. *See Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011); *Best v. Newrez LLC*, No. GJH-19-2331, 2020 WL 5513433, at *9 (D. Md. Sept. 11, 2020). So the court will not reconsider arguments made there here.

3

This level of specificity is not required before the court can consider extrinsic evidence. Many Virginia cases have affirmed awards of specific performance for sales of land described in less precise terms. *See, e.g.*, *Drake v. Livesay*, 341 S.E.2d 186, 188 (Va. 1986) (finding that a memorandum of an oral contract to sell "property . . . identified as 'Emmett and Ethel Dunlow's property' and 'this same property that I had told you we would sell to you'" "express[ed] the essential terms of the contract"); *Midkiff v. Glass*, 123 S.E. 329, 329 (Va. 1924) (affirming specific performance of a written contract for the sale of land "situated in Staunton magisterial district, Halifax county, Va., adjoining the land of W. T. Midkiff, Mr. Clark and others, containing 154 acres, more or less"); *Rollins v. Hicks*, 13 Va. Cir. 44, 1987 WL 488683, *2 (1987) (specifically enforcing oral contract for "the subject property"). These descriptions are less precise than the description in *Firebaugh*, and they do not include reference to Tax Parcels or lot numbers. Plaintiffs' November 2020 site plan appears to provide more specificity than the descriptions in the above cases. Therefore, it plausibly identifies Parcel 1 such that resort to extrinsic evidence to supplement that identification is appropriate.

In sum, R 150's position seems to be that, unless and until it formally subdivides the property, there is no legal description of Parcel 1 upon which the court could order specific performance; Plaintiffs' agreement to R 150's proposed subdivision plat is irrelevant. But at least three Virginia cases undermine this position, and two of these are reported cases from the Supreme Court of Virginia. Plaintiffs assert that the Third Amendment incorporates their November 2020 site plan by reference, and the layout on that site plan is corroborated by extrinsic evidence including—but not limited to—R 150's own proposed subdivision plat. The court continues to find this position plausible.

*Second*, R 150 states that there were ongoing negotiations between the parties about Parcel 1's final location even after the Third Amendment had been signed. The court has no doubt that the parties spent abundant time and resources discussing Parcel 1's location. But nothing in R 150's briefs supporting this motion suggests they continued doing so after signing the Third Amendment. Almost every record document R 150 identifies predates the Third Amendment.[2] R 150's failure to point to documents showing contemporaneous uncertainty or further negotiations about Parcel 1's location reinforces the court's conclusion that the parties had plausibly agreed to the same.

The sole document postdating the Third Amendment is a February 10, 2021 letter from Cathcart to R 150 attaching a draft Fourth Amendment. (*See* ECF No. 80-19.) The Fourth Amendment references a site plan from August 2020, and R 150 contends that this reference confirms that the parties had not agreed on Parcel 1's boundaries in the Third Amendment. (*See* Def.'s Br. Supp. Mot. Dismiss, at 20–21 (citing ECF No. 80-19 at 10).) Of course, the parties never signed the proposed Fourth Amendment, so it cannot supersede the Third Amendment's terms. (And Plaintiffs represent to the court that the Fourth Amendment's reference to a different site plan is, in any event, a typographical error. (*See* Pls.' Br. Opp'n Mot. Dismiss, at 8 [ECF No. 114].))

*Third*, R 150 asserts that, as pleaded, Plaintiffs have admitted that no single document reflects Parcel 1's location. In their second amended complaint, Plaintiffs allege that "an

---

[2] (*See* ECF No. 80-4 (dated March 27, 2019); ECF No. 112-4 (dated October 21, 2019); ECF No. 80-6 (dated October 25–30, 2019); ECF No. 80-8 (dated December 9, 2019); ECF No. 112-1 (dated April 30, 2020); ECF No. 112-2 (dated August 5, 2020); ECF No. 80-11 (dated October 15–28, 2020); ECF No. 80-12 (dated December 22, 2020).)

5

unconditionally complete description of the Phase One Property" is "set forth with certainty" in at least five different documents. (Second Am. Compl. ¶ 64 [ECF No. 80-1].) So Plaintiffs are just cobbling together representations from each document to create a final, agreed-to conveyance that does not exist.[3] The court reads this allegation differently. Plaintiffs are not arguing that Parcel 1's boundaries are scattered across multiple documents that must be read in combination to reveal the conveyance. They are arguing that all of these documents corroborate each other and that this corroboration confirms that the parties had agreed to Parcel 1's location. This is plausible.

*Fourth*, R 150 argues that, even if the court assumes "the parties may have reached an agreement on the building's and trail's 'location,' that does not mean they agreed upon the precise boundaries of the Property." (Def.'s Br. Supp. Mot. Dismiss, at 15 n.10.) The November 2020 site plan appears to belie this argument. Multiple pages show a boundary around either the entire Property or Parcel 1. (*See, e.g.*, ECF No. 80-15, at 4–5, 7–10, 13, 23–24 (Parcel 1); *id.* at 3–4 (Parcel 1 and Parcel 2 combined).) It is plausible that these depicted boundaries corroborate each other and represent an agreed-to boundary.

*Fifth*, R 150 objects that the property description fails to comply with Virginia's statute of frauds. Virginia requires that "any contract for the sale of real estate" be "in writing and signed by the party to be charged[.]" Va. Code Ann. § 11-2(6). But the Third Amendment, which incorporates by reference the November 2020 site plan plausibly depicting Parcel 1, is

---

[3] R 150 takes one shot at showing that two of these documents do not corroborate each other. It points out that the "site area" on Plaintiffs' November 2020 site plan is listed as "± 16.8 acres," while R 150's draft deed lists the size of the parcel as "16.125 acres." (Def.'s Reply Br. at 4–5 [ECF No. 116] (citing ECF No. 80-15, at 1 and ECF No. 80-12, at 5).) Of course, a plot of land that is approximately "± 16.8 acres" might actually be "16.125 acres."

in writing and signed by R 150. (*See* ECF No. 80-14, at 1–5.) So the statute of frauds does not bar Plaintiffs' claim.

*Sixth*, R 150 reiterates its argument that specific performance would be impracticable. The Supreme Court of Virginia and the Restatement both make clear that impracticability is an independently sufficient basis for denying specific performance. *See Holtzman Oil Corp. v. Green Project, LLC*, No. 141863, 2016 WL 3208943, at *4 (Va. Apr. 21, 2016); *see also* Restatement (Second) of Contracts § 366. But at the pleadings stage, it is plausible that specific performance would not be impracticable. When the parties signed the Third Amendment, they agreed that they would close in less than 100 days. (*See* ECF No. 80-14, at 1.) So "[a]t this stage, the court believes it could enter a short order directing R 150 to use its best efforts to resolve a limited number of outstanding contractual duties, if appropriate after summary judgment and trial. Of course, as the parties undertake discovery, the court's impression could change." *Rsrv. at Winchester*, 2022 WL 358500, at *17.

*Seventh*, R 150 argues that a "willful breach" requires either a formal tort count in a complaint or that the alleged breach in fact have been tortious. To date, the parties and this court have struggled to find Virginia law that either supports or undermines this argument. So R 150 has turned to other jurisdictions, and it cites *Metropolitan Life Insurance Co. v. Noble Lowndes International, Inc.*, 643 N.E.2d 504 (N.Y. 1994), for support.

But *Metropolitan Life* cannot support such a broad proposition. In that case, the contract at issue relieved the defendant, a programing company called Noble Lowndes, of any liability for consequential damages related to nonperformance unless the damages stemmed from "*intentional misrepresentations*, or damages arising out of [Noble Lowndes'] *willful acts or gross*

7

*negligence.*" *Metro. Life*, 643 N.E.2d at 506 (emphasis original). At least three independent factors guided the court's determination that the phrase "willful acts" covered only tortious conduct.

First, the court read "willful acts" in conjunction with "intentional misrepresentations" and "gross negligence." *Id.* at 508. Applying the *ejusdem generis* canon of construction, the court interpreted "willful acts" as "referring to conduct similar in nature to . . . 'intentional misrepresentation' and 'gross negligence.'" *Id.* It "conclude[d] that the term willful acts as used in [the] contract was intended by the parties to subsume conduct which is tortious in nature . . . ." *Id.* This consideration does not apply here, where "willful breach" appears alone and not as part of a series.

Second, reading "willful acts" to include intentional nonperformance would have allowed Metropolitan Life, the plaintiff, to end-run around other contract provisions that otherwise limited defendant's potential liability for nonperformance. *See id.* at 508. This would violate the interpretive canon that contracts are read as a whole. *Id.* Neither party here has made any argument tying the use of "willful breach" to other contract provisions.

And third, Metropolitan Life offered no reason for how distinguishing between intentional and inadvertent nonperformance would further the contract's goals. *Id.* at 507. Similarly, in this case, neither party has attempted to explain why their preferred construction of "willful breach" furthers the Option's purpose.

More broadly—and critically—the Court of Appeals of New York specifically held open the possibility that contracting parties could use the term willful to distinguish between intentional and inadvertent breaches. "[T]o the extent that the Appellate Division opinion holds that tort law principles apply in all cases in which the word willful is at issue or thereby

8

limits the legal meaning of the word, we do not agree." *See id.* at 506–07. This court has not seen, and neither party has pointed to, a later case from the New York Court of Appeals overturning that statement.

The parties' intentions for the term "willful breach" will be subject to discovery. *See VTech Holdings Ltd. v. Lucent Techs., Inc.*, 172 F. Supp. 2d 435, 441–42 (S.D.N.Y. 2001). The parties will also have the opportunity to develop a record determining whether R 150's conduct has, in fact, been tortious. *Cf. Lockheed Martin Transp. Sec. Sols. v. MTA Cap. Constr. Co.*, Nos. 09 Civ. 4077, 6033, 2014 WL 12560686, at *29–30 (S.D.N.Y. 2014).

## IV. CONCLUSION

For the reasons discussed above (and in the court's prior opinion), R 150's motion to dismiss Plaintiffs' second amended complaint (ECF No. 111) will be denied.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 17th day of March, 2022.

　　　　　　　　　　　　　　　　*/s/ Thomas T. Cullen*
　　　　　　　　　　　　　　　　HON. THOMAS T. CULLEN
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE