IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| The Reserve at Winchester I, LLC et al., | ) | |
|     Plaintiffs, | ) | Civil Action No. 3:21cv00008 |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| R 150 SPE, LLC, | ) | By:   Joel C. Hoppe |
|     Defendant. | ) | United States Magistrate Judge |

This matter is before the Court on Defendant R 150 SPE, LLC's Motion to Quash Subpoenas Duces Tecum, ECF No. 76. In the motion, Defendant requests that the Court quash subpoenas duces tecum served on nonparties The Bank of Clarke County ("Bank"), Cushman & Wakefield of Virginia, Inc. ("Cushman & Wakefield"); Fundamental Advisors, L.P. ("Fundamental"); Marsh & Legge Land Surveyors, P.L.C. ("Marsh & Legge"); MMA Capital Corporation ("MMA"); and Hunt Companies, Inc. ("Hunt"). For the following reasons, Defendant's motion to quash, ECF No. 76, is hereby GRANTED in part and DENIED in part.

I. Background[1]

In their Second Amended Complaint, Plaintiffs The Reserve at Winchester I, LLC ("The Reserve") and Robert Cathcart (collectively, "Plaintiffs") allege that Defendant breached an agreement (the "Agreement") in which Defendant agreed to sell Cathcart a roughly twenty-six-acre portion (the "Sale Property") of a 150-acre parcel (the "Project Property").[2] *See generally*

---

[1] This section includes only those facts pertinent to the disposition of the instant motion. A more comprehensive summary of the allegations of Plaintiffs' Second Amended Complaint, ECF No. 127, and Defendant's Amended Counterclaim, ECF No. 129, can be found in my September 29, 2022 Order, ECF No. 167.

[2] For purposes of this Order, "Project Property" refers to the whole of the 150-acre property owned by Defendant, referred to in the Agreement, *see* Second Am. Compl. Ex. A, ECF No. 127-1, at 20, known as Tax Map Reference Nos. 64-A-10, 64-A-12, and 63-A-150 located in Frederick, Virginia. The "Sale Property" refers only to the roughly twenty-six-acre portion of the Project Property that Defendant allegedly agreed to sell Plaintiffs.

1

Second Am. Compl., ECF No. 127. Plaintiffs also filed a Memorandum of *Lis Pendens*, preventing Defendant from marketing any portion of the Project Property during the pendency of this litigation. *See* ECF Nos. 45, 103.

Defendant is a limited liability company ("LLC") whose sole member is MMA, Second Am. Compl. ¶ 9, ECF No. 127, was represented by Hunt in the underlying transactions, *see id.* ¶ 28. When Cathcart and Defendant initially entered the Agreement, the question of what precise portion of the Project Property was to be sold to Cathcart remained open. *Id*. ¶ 18. The parties amended the Agreement three times. *Id.* ¶¶ 20, 23, 37. Plaintiffs allege that Defendant willfully breached the Agreement in various ways throughout the course of the contractual relationship, including by "recording a deed of trust and corresponding assignments of rents securing a $10M loan" that encumbered the Sale Property, without first giving Plaintiffs notice or obtaining their consent. *Id.* ¶¶ 29, 45(a).

A key disagreement in this action is whether the parties reached an agreement as to which portion of the Project Property Defendant would sell to Plaintiffs. Both parties acknowledge that under the Second Amendment to the Agreement, Plaintiffs would purchase parcels in two separate phases. *Id.* ¶ 23; *see* Am. Countercl. ¶¶ 13, 25, 40. Plaintiffs allege that the parties agreed to the specific property to be sold in Phase One, as depicted in an October 28, 2020 subdivision plat prepared by Marsh & Legge, Second Am. Compl. ¶¶ 31–40; *see also* Second Am. Compl. Ex. K, Email from B. Wullschlager to T. Dofflemyer (Dec. 22, 2020), ECF No. 127-11, and that the parties agreed to a "reasonably and sufficiently certain description of the Phase Two Property," Second Am. Compl. ¶ 63. Conversely, Defendant alleges that the parties never agreed to the location of the parcels. *See* Am. Countercl. ¶¶ 24–26. Plaintiffs assert a claim for specific performance, Second Am. Compl. ¶¶ 61–80, or, alternatively, for damages resulting

from Defendant's breach of contract, *id.* ¶¶ 81–89. Defendant asserts damages counterclaims for breach of contract, Am. Countercl. ¶¶ 78–86, and breach of the implied covenant of good faith and fair dealing, *id.* ¶¶ 87–90.

On November 5, 2021, Plaintiffs issued subpoenas duces tecum to nonparties the Bank, Cushman & Wakefield, Fundamental, Marsh & Legge, MMA, and Hunt. Def.'s Br. 2, ECF No. 77. On November 22, 2021, Defendant filed the instant motion to quash, requesting that the Court either quash the subpoenas in their entirety or narrow them in scope.[3] ECF No. 76. The motion has been fully briefed. *See* ECF Nos. 77, 89, 91. After the parties submitted a status report on this and several other discovery disputes, ECF No. 146, the Court held a hearing, ECF No. 154.

## II. Legal Framework

---

[3] The subpoenas direct their nonparty recipients to produce the requested documents at places outside the Western District of Virginia. *See* ECF No. 77-1, at 1, 7, 17, 21 (Tysons, Va.); *id.* at 12 (New York City); *id.* at 26 (El Paso, Tex.). Defendant should have moved to quash each subpoena in the court for the district where that nonparty recipient's "compliance is required," Fed. R. Civ. P. 45(d)(1), rather than filing an omnibus motion to quash all six subpoenas in the court where this action is pending, Fed. R. Civ. P. 26(c). *See generally Sines v. Kessler*, No. 3:17cv72, 2018 U.S. Dist. LEXIS 133124, at *5 (Apr. 20, 2018) (collecting cases). Rule 45 "give[s] 'the court for the district where compliance [with a subpoena] is required,' and not the litigation court from which a subpoena must issue, primary authority over disputes about subpoenas directed at nonparties located within the compliance court's territorial jurisdiction." *Id.* (citing Fed. R. Civ. P. 45(a)–(f)). "However, Rule 26 also provides that '[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending,' and that the litigation 'court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden.'" *Id.* (quoting Fed. R. Civ. P. 26(c)(1)). Defendant's motion expressly seeks a protective order against what Defendant believes are Plaintiffs' "unduly burdensome and overly broad" requests for "irrelevant" information in the nonparties' possession. Def.'s Br. 8. Accordingly, I consider Defendant's requests under Rule 26(c), and not under Rule 45(d). *See, e.g., Sines*, 2018 U.S. Dist. LEXIS 133124, at *5 (considering defendant's motion to quash plaintiffs' third-party subpoenas seeking information related to nonparties under Rule 26(c)); *Consumer Fin. Protection Bureau v. Nexus Services, Inc.*, No. 5:21cv16, 2022 WL 1597840, at *3 n.4 (W.D. Va. May 19, 2022) (same); *cf. Sirpal v. Fengrong Wang*, Civ. No. WDQ-12-0365, 2012 WL 2880565, at *4 n.12 (D. Md. July 12, 2012) ("[T]he Court could consider the [plaintiff's] motion [to quash third-party subpoena] as one for a protective order, and consider the Rule 26 factors, including relevance, in deciding the motion."); *In re Verizon Wireless*, 2019 WL 4415538, at *6 (D. Md. Sept. 16, 2019) (concluding that movants did not have standing to challenge third-party subpoena under Rule 45, but relying on Rule 26(b)(2)(C)(iii) to quash subpoena which did "not satisfy the [Rule's] proportionality concerns as the 'proposed discovery outweigh[ed] its likely benefit'").

"All civil discovery" into nonprivileged matters, "whether sought from parties or nonparties, is limited in scope by Rule 26(b)(1) in two fundamental ways. First, the matter sought must be 'relevant to any party's claim or defense.'" *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019) (quoting Fed. R. Civ. P. 26(b)(1)); *see Bell, Inc. v. GE Lighting, LLC*, No. 6:14cv12, 2014 WL 1630754, at *6 (W.D. Va. Apr. 23, 2014) ("The scope of discovery for a nonparty litigant under a subpoena duces tecum is the same as the scope of a discovery request made upon a party to the action, and a party is entitled to information that is relevant to a claim or defense in the matter at issue." (cleaned up)). "Relevance is not, on its own, a high bar." *Jordan*, 921 F.3d at 188; *see, e.g.*, *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) ("[R]elevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "There may be a mountain of documents . . . that are relevant in some way to the parties' dispute, even though much of it is uninteresting or cumulative." *Jordan*, 921 F.3d at 188. Rule 26(b)(1) therefore imposes a second requirement that discovery into relevant matters "must also be 'proportional to the needs of the case.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). "Proportionality requires courts to consider, among other things, 'whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). "This relieves parties from the burden of taking unreasonable steps to ferret out every relevant document."[4] *Id.*; *see also* Fed. R. Civ. P. 26(g)(1)(B)(ii)–(iii).

---

[4] "When discovery is sought from *nonparties*, however, its scope must be limited even more." *Jordan*, 921 F.3d at 189 (emphasis added). "Nonparties are strangers to the litigation, and since they have no dog in the fight, they have a different set of expectations from the parties themselves. Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Id.* (cleaned up). "A more demanding variant of the proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena issued against a

4

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending[.]" Fed. R. Civ. P. 26(c)(1). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" *Id.* "This undue burden category 'encompasses situations where [a] subpoena seeks information irrelevant'" to the parties' claims or defenses, *HDSherer LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 309 (D.S.C. 2013) (quoting *Cook v. Howard*, 484 F. App'x 805, 812 n.7 (4th Cir. 2012)), or is so broad that it is not proportional to the needs of the case, *In re Verizon Wireless*, 2019 WL 4415538, at *6 ("A subpoena imposes an undue burden on a party when [it] is overbroad.") (citing *In re Subpoena Duces Tecum to AOL*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008)); *cf. Jordan*, 921 F.3d at 190 ("Another type of burden arises when a subpoena is overbroad—that is, when it seeks information beyond what the requesting party reasonably requires" from the nonparty) (citing Fed. R. Civ. P. 45(d)(3)(A)(iv)). "[T]he burden is on the party resisting discovery to explain specifically why its objections, including those based on irrelevance, are proper given the broad and liberal construction of federal discovery rules." *Desrosiers v. MAG Indus. Automation Sys.*, 675 F. Supp. 2d 598, 601 (D. Md.

---

nonparty 'subjects a person to undue burden' and must be quashed or modified." *Id.* (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)). "As under Rule 26, the ultimate question is still whether the benefits to the requesting party outweigh the burdens on the recipient." *Id.* But, *Jordan* instructs that lower "courts must give the recipient's nonparty status special weight" in evaluating "not just the relevance of the information sought, but [also] the requesting party's need for it" and whether the "information is available to the requesting party from other sources." *Id.* (cleaned up). The movant still bears the burdens of proof and of persuasion on a motion to quash under Rule 45(d). *Id.* at 189 n.2 ("We do not mean to imply that, on a motion to quash, the requesting party bears the burdens of proof and of persuasion. The moving party bears those burdens."). "But the[se] are not terribly difficult burdens to meet if the requesting party cannot articulate its need for the information and address obvious alternative sources." *Id.* Additionally, "[a] nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it." *Id.* at 190. This "more demanding" inquiry is not necessary where, as here, it is a *party* to the litigation who seeks to quash a subpoena served on a nonparty and the nonparty has not sought the court's protection. *See, e.g.*, *Nexus Servs.*, 2022 WL 1597840, at *8–9. "[T]he relevance and proportionality standards in Rule 26(b)(1)" provide the proper legal framework in such cases. *Id.* (citing *Singletary v. Sterling Transp. Co., Inc.*, 289 F.R.D. 237, 240–42 (E.D. Va. 2012)); *see* Fed. R. Civ. P. 26(b)(2)(C)(iii), (c)(1).

5

2009); *accord Stone v. Trump*, 453 F. Supp. 3d 758, 766 (D. Md. 2020) ("[T]he party resisting discovery bears the burden of persuasion and not the party seeking discovery."). "Specifically, the movant must make a particularized showing" that the information sought is either irrelevant or not proportional to the needs of the case. *Mainstreet Collection, Inc. v. Kirkland's Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010). "[C]onclsuory or generalized statements" opposing discovery "fail to satisfy this burden as a matter of law." *Id.* (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402–03 (4th Cir. 2003)); *accord Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) ("In order to establish good cause [under Rule 26(c)], a proponent may not rely upon stereotyped and conclusory statements, but must present a particular and specific demonstration of fact, as to why a protective order should issue." (internal quotation marks omitted)).

## III. Discussion

Defendant generally contends that the "the information and documents requested are privileged, burdensome, irrelevant, contain sensitive commercial information and are duplicative of the information sought in" the discovery requests that Plaintiffs propounded on Defendant. Def.'s Br. 3. More specifically, Defendant argues that the nonparties to whom the subpoenas are addressed would not possess information relevant to Plaintiffs' allegations or Defendant's counterclaims, *id.* at 7, and that an undue burden is "necessarily established" by the fact that many of these requests seek the same information Plaintiff has requested from Defendant. *Id.* Defendant also argues that requests seeking communications between these nonparties and Defendant are improper because "Cathcart cannot seek information from a nonparty that it can obtain from" Defendant directly. *Id.* (citing *Jordan*, 921 F.3d at 189). Thus, in Defendant's view, Plaintiffs have "no good reason" to pull nonparties into this dispute.

In response, Plaintiffs explain that they propounded several requests for admission, interrogatories, and requests for production of documents to Defendant on October 1, 2021. Pls.' Br. 3, ECF No. 89. According to Plaintiffs, however, "without any notice or discussion of its objections related to the requests, the Friday before the responses were due, R 150 filed [a] Motion for a Protective Order." *Id.* (citing ECF No. 64). Further, at the time Plaintiffs served these nonparty subpoenas, Defendant had failed to produce a single responsive document.[5] *Id.* Plaintiffs additionally argue that Defendant's reliance on *Jordan*, 921 F.3d 180, is misplaced because these nonparties cannot accurately be characterized as "bystanders." *Id.* at 3–4. Plaintiffs explain that "employees of Hunt and MMA, which was acquired by Fundamental, were directly involved in the negotiation of and decision for R 150 to enter into the . . . Agreement and its subsequent amendments; identification of the land for purchase by Plaintiffs; both parties' performance of the[ir] respective obligations under the Agreement; and R 150's decision to wrongfully and unilaterally terminate the Agreement." *Id.* at 4 (parenthetical omitted); *see also* Second Am. Compl. ¶ 53. Further, the Bank "holds information related to R 150's breach of the Agreement through R 150's encumbrance of the Property without providing prior notice to Plaintiffs." Pls.' Br. 4. Marsh & Legge was Defendant's surveyor for the Project Property and Sale Property and drafted the final subdivision plat that identified the property to be purchased in Phase One, and its employees "were constantly involved in correspondence related to Plaintiffs' efforts to finalize a sale and R 150's failure to satisfy its obligations in order to do so." *Id.* Cushman & Wakefield "likely holds information related to any effort or attempt by R 150 to

---

[5] The court held a hearing on Defendant's motion to quash on July 11, 2022. *See* ECF No. 154. At the hearing, Plaintiffs' counsel represented that Defendant had turned over 4,000 pages of documentation that morning. In supplemental briefing, Plaintiffs assert that Defendant's production was inadequate. ECF No. 159.

wrongfully sell or place for sale any of the Property for purchase by Plaintiffs, which directly relates to whether R 150 intended to fulfill its obligations under the Agreement and finalize a sale of the Property." *Id.* (parenthetical omitted). Plaintiff also argues that Defendant has failed to meet its burden of showing that the information requested is confidential or privileged. *Id.* at 7–8.

In reply, Defendant counters that even if these nonparties possess relevant information, that is not sufficient to justify involving them in this case. *See* Def.'s Reply 5, ECF No. 91. As to the Bank Subpoena, Defendant asserts that Plaintiffs have attached documents to their pleadings containing the information they seek from the Bank. *See id.* at 7. With respect to the Cushman & Wakefield Subpoena, Defendant contends that "[u]nder no scenario would this Subpoena be relevant to the damages incurred by either party." *Id.* Defendant also asserts that the Marsh & Legge Subpoena seeks irrelevant information because the company's role as a surveyor for the Project Property and draft plats for the same, "bear[] no relevance to the actual damages claims of either party." *Id.* at 8. Defendant additionally disputes Plaintiffs' characterization of *Jordan*, 921 F.3d 180, asserting that "*Jordan* held that nonparties are categorically strangers to litigation." Def.'s Reply 9. Lastly, Defendant articulates its "confidential[ly] and privilege" arguments somewhat more specifically, asserting that a bank necessarily "would receive and hold confidential information pertaining to its borrower" and that "the subpoena to Fundamental, which holds ownership interest in R 150, improperly requests communications discussing the ongoing litigation." *Id.* at 10.

A.     *Plaintiffs Had "Good Reason" to Bring Nonparties into the Litigation*

Plaintiffs explain their need to issue the subpoenas in part on Defendant's widespread objections to their discovery requests. *Cf. Jordan*, 921 F.3d at 189 ("[T]he requesting party

should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation . . . ."). Although Defendant has produced some documents, *see* ECF No. 159, and has recently been ordered to produce more, ECF No. 167, Defendant has not identified any documents, other than one Plaintiffs attached to their filings, that fall under Plaintiffs' subpoenas and are supposedly duplicative of Defendant's production. *See* Def.'s Br. 7; Def.'s Reply 7 (identifying one document that Plaintiffs attached to a filing as a Credit Line Deed of Trust from the Bank). But even if some of Plaintiffs' discovery requests were properly objected to, it is indisputable that at least some of the documents sought are relevant and non-privileged. *See* ECF No. 70-5. Yet, Defendant neither explained what documents were being withheld based on its objections, nor did it turn over any documentation that clearly would not be encompassed by its objections. *See* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."). Accordingly, I find that Plaintiffs had a "good reason" to issue the subpoenas. *See, e.g.*, *Nexus Servs.*, 2022 WL 1597840, at *5, *8–9 (citing Fed. R. Civ. P. 26(b)(1)).

B.  *Defendant's Assertions of Privilege & Confidentiality*

Defendant asserts that much of the information requested by Plaintiffs is "privileged and confidential." Def.'s Br. 6, 8; *see also* Def.'s Reply 9–10. "A party asserting privilege has the burden of demonstrating its applicability." *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011). It must "expressly make the claim" and "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

9

Defendant has not properly supported its privilege and confidentiality objections. Defendant makes only two specific arguments: one, that the Bank necessarily "would receive and hold confidential information pertaining to its borrower," and two, that "the subpoena to Fundamental, which holds ownership interest in R 150, improperly requests communications discussing the ongoing litigation." *Id.* at 10 ("[T]he Subpoenas to Hunt and MMA must be quashed for the same reasons."). The Bank likely has confidential financial information about the Defendant, but that information is not "privileged" in the sense that it is protected from compelled disclosure under Rule 26. Instead, such information may be subject to certain limitations on its use, and, indeed, a protective order entered in this case, ECF No. 148, provides those limitations. Additionally, communications about the litigation, *see, e.g.*, ECF No. 77-1 at 6, 16, 25, 30, are not protected from disclosure as privileged unless they are attorney work product or attorney-client communications. Defendant has not made an adequate showing that any specific document or category of documents falls within those categories of privileged materials. Accordingly, Defendant's general assertions of privilege must be rejected. Nonetheless, when the nonparty entities respond to Plaintiffs' subpoenas, they may withhold a document that is subject to attorney work product and attorney client communication privileges, as permitted by the procedures in Rule 45(e)(2)(A).[6]

C.  *Relevance, Proportionality & Undue Burden*

Defendant also contends that the subpoenas request irrelevant information and are not tailored to the claims and defenses in this action. Def.'s Br. 7. I address the relevancy and proportionality of each of the subpoenas in turn.

1.  *The Bank of Clarke County*

---

[6] Each subpoena acknowledges the protections afforded to privileged materials and indicates that it does not seek such information. *See* ECF No. 77-1 at 4–5, 10, 15, 20, 24, 29.

The Bank Subpoena seeks any and all: (1) documents memorializing the loan, the deed of trust, or the assignment of rents (collectively, the "Loan"); (2) financial information, documents, and communications exchanged with Defendant, MMA, Hunt, and/or Fundamental (the "Grouped Entities") related to the Loan; (3) communications between or among the Grouped Entities related to the Loan, and/or related to any declaration, assertion, or notice of any breach or default under the Loan; (4) communications between or among the Grouped Entities and the Bank related to this litigation; (5) appraisals, estimates, or statements of any value of any assets or property, or other information that the Bank considered in authorizing the Loan; and (6) documents or communications between or among the Grouped Entities regarding any other financing, or requests for financing related to the Property.[7] ECF No. 77-1, at 1–6.

Defendant argues that the requested information is irrelevant because "Plaintiffs attached the very document they are seeking, a Credit Line Deed of Trust reflecting recordation against the Property and defining an event of default, to the Amended Complaint." Def.'s Reply 7. The subpoena clearly seeks more than just that one document. Additionally, Plaintiffs allege that by obtaining the Loan, Defendant encumbered the Sale Property without notice to or consent from Plaintiffs, thereby willfully breaching the Agreement. Second Am. Compl. ¶¶ 29, 45(a). Information about Defendant's reasons for obtaining the Loan and information about the Project Property that was shared with the Bank are relevant to the claims, including potential damages, and defenses in the case. Accordingly, I reject Defendant's argument about the subpoena issued to the Bank.

    2.    *Cushman & Wakefield*

---

[7] In the subpoenas, "Property" is defined as "that property owned by R 150 SPE, LLC, referred to in Exhibit A of the Agreement, and known as Tax Map Nos. 64-A-10, 63-A-150, and/or 64-A-12 located in Frederick County, Virginia." *See* ECF No. 77-1, at 4. Thus, as defined in the subpoenas, "Property" refers to the Project Property.

11

The Cushman & Wakefield Subpoena seeks any and all documents and communications from January 1, 2017, through the present: (1) between or among the Grouped Entities and Cushman & Wakefield relating to or reflecting marketing or advertising efforts by Cushman & Wakefield with respect to the Project Property; (2) between or among the Grouped Entities and Cushman & Wakefield relating to or reflecting any expression of interest, proposals, offers, or agreements received by R 150 or Cushman & Wakefield related to sales of all or a portion of the Project Property; (3) that refer to or reflect any brokerage, listing, or marketing agreements between the Grouped Entities and Cushman & Wakefield related to the Project Property; and (4) that refer to or reflect any payments by the Grouped Entities to Cushman & Wakefield related to the Project Property. ECF No. 77-1, at 7–11.

In its brief, Defendant generally objects to these requests as repetitive. Def.'s Br. 3. Plaintiffs counter that "Cushman & Wakefield likely holds information related to any effort or attempt by R 150 to wrongfully sell or place for sale any of the Property for purchase by Plaintiffs, which directly relates to whether R 150 intended to fulfill its obligations under the Agreement and finalize a sale." Pls.' Br. 4. In reply, Defendant states in conclusory fashion that "[u]nder no scenario would this Subpoena be relevant to the damages incurred by either party." Def.'s Reply 7.

The subpoena seeks relevant information for several reasons. First, Defendant's efforts to market, advertise, or sell the Project Property may provide information about the alleged Sale Property. Additionally, expressions of interest, proposals, offers, or agreements related to the Sale Property could reflect Defendant's willingness to fulfill its obligations under the Agreement. Furthermore, sales of other portions of the Project Property could impact the Sale Property through easements or utilities. Thus, information about any efforts to sell those other

12

portions of the Project Property may have some bearing on Defendant's performance under the Agreement. The subpoena encompasses such information. Thus, Defendant's arguments must be rejected.

### 3. *Fundamental*

The Fundamental Subpoena seeks any and all documents and communications: (1) referring to the Agreement; (2) referring to or reflecting either party's obligations under the Agreement; (3) referring to or reflecting any valuations, appraisals, or estimates of the Project Property since January 1, 2017; (4) referring to or reflecting all marketing efforts, proposals, written interest, or agreements to sell any portion of the Project Property or reflecting any interest in the Project Property since January 1, 2017; (5) reflecting or memorializing the negotiation, acquisition, or purchase of MMA, or any interest therein, but only to the extent such documents relate to or refer to the Agreement, this litigation, or the Project Property; (6) that refer to or discuss this litigation; and (7) relating to financing acquired for development on, or secured by, the Project Property.[8] ECF No. 77-1, at 12–16.

Defendant objects only that the subpoena is duplicative of discovery requests Plaintiffs propounded on Defendant, Def.'s Br. 3, and its general assertion that the information sought is privileged, Def.'s Reply 10. As discussed above, these arguments are without merit. Moreover, the requested information appears relevant to the issues in the case. Accordingly, Defendant's argument is rejected.

### 4. *Marsh & Legge*

The Marsh & Legge Subpoena seeks any and all documents and communications from January 1, 2017, through the present: (1) between or among Defendant and Marsh & Legge

---

[8] This subpoena lists eight categories of documents, but two of those categories are identical. ECF No. 77-1, at 16.

related in any way to the Project Property; (2) that refer to or reflect any agreement between Marsh & Legge[9] related to the Project Property; and (3) that refer to or reflect any payments by Defendant to Marsh & Legge related to the Project Property. ECF No. 77-1, at 17–20.

Defendant's only arguments with respect to the Marsh & Legge Subpoena are that it is repetitive of discovery requests Plaintiffs have propounded on Defendant, Def.'s Br. 3, and its conclusory assertion that "[t]he fact that Marsh & Legge was a surveyor for the Project and the Property and drafted plans for the same bears no relevance on the actual damages claims of either party," Def.'s Reply 7. Plaintiffs possess some documents, such as draft plats, from Marsh & Legge. Other documents or information that in any way depict, describe, or discuss the area of the Sale Property are relevant, and the Court has already rejected Defendant's argument that Plaintiffs should not be allowed to ask nonparties to produce information also included in their discovery requests in Defendant. Information about the Project Property as a whole is relevant as it necessarily has some bearing on the Sale Property. Survey or other information specifically about portions of the Project Property that do not relate to the Sale Property is not relevant. Accordingly, the Marsh & Legge Subpoena must be modified to remove survey or other information about portions of the Project Property that do not relate to the Sale Property.

5.  *MMA & Hunt*

The MMA Subpoena and Hunt Subpoena contain twelve identical requests seeking any and all documents and communications: (1) referring to the Agreement; (2) referring to or reflecting the performance of either party's obligations under the Agreement; (3) referring to or reflecting any valuations, appraisals, or estimates of the Project Property since January 1, 2017; (4) referring to or reflecting any and all marketing efforts, offers, proposals, written interest, or

---

[9] The subpoena's second topic seeks information about any relevant agreement between Marsh & Legge and some other party, without identifying the other party to that agreement.

agreement to sell any portion of the Project Property or reflecting any interest in the Project Property since January 1, 2017; (5) referring to or discussing this litigation; (6) reflecting or memorializing the negotiation, acquisition, or purchase or MMA, or any interest therein, but only to the extent such documents relate to or refer to the Agreement, this litigation, or the Project Property; (7) relating to financing acquired for development on, or secured by, the Project Property; (8) relating to the termination of the Agreement by Defendant; (9) including or referencing communications with Plaintiffs related to the Project Property or the Agreement; (10) relating to negotiations and discussions with Plaintiffs regarding the location of the land to be purchased by Plaintiffs under the Agreement, the phase in which such land was to be purchased, and any effort to survey or subdivide the land to be purchased from the Project Property; (11) relating to the Loan from Bank, including the application and approval process and disclosures made to Bank with respect to the Loan; and (12) regarding any declaration of default by Bank with respect to the Loan.

These requests appear to seek relevant information, and Defendant has not presented any specific argument to the contrary. The only specific arguments Defendant makes about the subpoenas to MMA and Hunt concern the protection of purportedly privileged materials and the burden on non-parties. Those arguments were addressed above. Moreover, MMA and Hunt are alleged to have been closely involved in the negotiation and performance of the Agreement. For all of those reasons, they must answer the subpoenas.

## IV. Conclusion & Order

For the foregoing reasons, Defendant's Motion to Quash Subpoenas Duces Tecum, ECF No. 76, is hereby **GRANTED in part** and **DENIED in part**, as follows:

1. The Bank is hereby **ORDERED** to respond to the Bank Subpoena within twenty-one (21) days from the date of this Order.

2. Cushman & Wakefield is hereby **ORDERED** to respond to the Cushman & Wakefield Subpoena within twenty-one (21) days from the date of this Order.

3. Fundamental is hereby **ORDERED** to respond to the Fundamental Subpoena within twenty-one (21) days from the date of this Order.

4. The Marsh & Legge Subpoena is hereby **MODIFIED** to remove survey or other information about portions of the Project Property that do not relate to the Sale Property. Marsh & Legge is hereby **ORDERED** to respond to the Marsh & Legge Subpoena, as modified, within twenty-one (21) days from the date of this Order.

5. MMA is hereby **ORDERED** to respond to the MMA Subpoena within twenty-one (21) days from the date of this Order.

6. Hunt is hereby **ORDERED** to respond to the Hunt Subpoena within twenty-one (21) days from the date of this Order.

It is **SO ORDERED**

The clerk is directed to deliver a copy of this Memorandum Opinion & Order to the parties.

ENTERED: September 30, 2022

Joel C. Hoppe
United States Magistrate Judge